UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

Christine and Peter Terzo,

Debtors

Bankruptcy No. 13-04073

Chapter 7

## MEMORANDUM OPINION ON UNITED STATES TRUSTEE'S & FIRST MERITBANK'S MOTIONS TO DISMISS BANKRUPTCY CASE

The debtors filed for bankruptcy relief under chapter 7. The United States Trustee ("the UST") and FirstMerit Bank, N.A. ("FirstMerit") filed motions to dismiss the case as an abuse of chapter 7 under § 707(b). Movants assert both that Debtors had primarily consumer debt, and that a presumption of abuse arises under § 707(b)(2). Debtor argues that Debtors do not have primarily consumer debt, and that § 707(b) does not apply.

After the matter was briefed by all parties, Debtor was found to have primarily consumer debts in an oral ruling announced on November 14, 2013, a ruling that is supplemented below. At the hearing on November 14, 2013, Debtors were invited to file further briefing with regard to the issue of the presumption of abuse under § 707(b)(2). Debtors' counsel declined the invitation. He stated in open court that he was happy to rest on the UST and FirstMerit briefs on that issue. Thus, any further briefing by Debtors on the presumption of abuse calculation was waived. As to the relevant facts on both issues, counsel invited the court to review the exhibits appended by moving parties, but declined to identify or brief portions thereof that he relied on. More on that below.

For reasons stated below, Debtors bankruptcy case must be dismissed as an abuse under § 707(b) unless converted to one under Chapter 13.

### Undisputed Facts

As discussed below, the facts alleged in paragraphs 1–47 of FirstMerit's are deemed admitted. Thus, the following facts are undisputed.

According to the allegations in FirstMerit's Motion to Dismiss as admitted, Debtors reside at 1926 N. 75th Avenue in Elmwood Park, Illinois, (the "Elmwood Park Property") which is encumbered by mortgages in favor of CitiMortgage for $137,622.77 and FirstMerit for $196,814.72. The Terzos also maintain a second home located at 16800 E. El Lago Blvd, Unit 2027 in Fountain Hills, Arizona (the "El Lago Property"), encumbered by a mortgage in favor of Nationstar for $264,842. Terzos purchased the El Lago Property for personal

use, intending to use it as a winter home. They have never rented the El Lago property, nor derived any business income from the El Lago Property.

The Terzos also formerly owned real property located at 1930 N. Harlem Avenue, Unit 706 in Elmwood Park, Illinois (the "Harlem Property"), which they used as a rental property. The Harlem Property was encumbered by a mortgage in favor of FirstMerit. On June 6, 2011, FirstMerit instituted a foreclosure action against the property, which resulted in a foreclosure sale and a deficiency judgment in favor of FirstMerit for $107,145.51, which has since grown to $110,488. The Terzos also used to own real property located at 16107 East Emerald Drive, #208 in Fountain Hills, Arizona, (the Emerald Property) which they used as a rental property. The Emerald Property was encumbered by a mortgage in favor of Wells Fargo. Wells Fargo foreclosed in 2011, and wrote off the deficiency. Thus, Debtors currently owe nothing on the mortgage debt relating to the Emerald Property.

The Debtors also owe $23,000 to Nissan Motor Finance for a 2010 Nissan Maxima, and $25,000 to Wells Fargo for a 2010 Chevy Equinox. The Debtors also owe the Harlem homeowners association $243.34, and the Emerald Property homeowners association $188. The Debtors also owe credit card debt totaling $33,302.

Relevant to the Means Test Calculation, Debtors' Amended Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Debtors' Means Test Calculation") discloses gross wages, salary, tips, bonuses, overtime, commissions of $1,278.33, pension and retirement income of $2,132.23, and under income from all other sources, a pension from the Village of Elmwood Park was listed for $4,564.82 for a total current monthly income of $7975.38. Debtors' Schedule I discloses a net employment income of $1,148.89, Social Security income of $2,665.00, pension income of $2,010.00 and other income specified "Village Pension" of $6,000.00.

Other undisputed facts appear in the Discussion below.

### Discussion

<u>Jurisdiction</u>

Jurisdiction lies over this motion under 28 U.S.C. § 1334. It is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. These motions seek dismissal of the bankruptcy case under § 707, and is therefore "a proceeding arising under title 11". 28 U.S.C. § 157(a). A motion to dismiss a case "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

<u>Debtor has primarily consumer debts</u>

In order to dismiss a case for abuse under § 707(b), the debtor must have debts that are "primarily consumer debts."

Debtors were ordered to file an Answer to allegations contained in paragraphs 1 through 47 of FirstMerit's Motion to Dismiss. Rule 9014 F.R.Bankr.P. provides, "The court may at any stage in a particular matter direct that one or more of the other rules in part VII shall apply." Rule 7008(b)(1) F.R.Bankr.P. provides that "In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Rule 7008(b)(6) F.R.Bankr.P. provides, "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Debtors did not file an Answer as ordered and therefore made no denials. Thus, paragraphs 1 through 47 from the FirstMerit Motion are deemed admitted.

Debtors' counsel responded to the UST and FirstMerit's motions by arguing that Mr. Terzo's deposition testimony at his Rule 2004 examination was inaccurate, and that Mrs. Terzo has more complete information about the Debtors' intentions regarding the El Lago property. He did not specify what parts of the depositions were referred to and did not file an affidavit by Mrs. Terzo as to her contentions. In a highly analogous context, the Seventh Circuit has held that in response to a summary judgment motion, a party may not create an issue of fact by contradicting an earlier deposition by a current affidavit. *Gates v. Caterpillar*, 513 F.3d 680, 688 n.5 (7th Cir. 2008). "Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme-Evans Co.*, 41 F.3d 64, 67 (7th Cir. 1995). Here, no such contention was made.

In the alternative, counsel for Debtors at the November 14th hearing invited the court to read the entirety of FirstMerit's exhibits attached to its motion, and Mr. Terzo's deposition in particular, because he said that the allegations in FirstMerit's motion are not supported by its exhibits. Counsel for Debtors did not specify what portions he was referring to or identify those parts supporting his argument. However, "[c]ourts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through

3

the assembled discovery material. Judges are not like pigs, hunting for truffles buried in the record." *Albrechtsen v. Bd. Of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002).

Debtors had the opportunity to contest FirstMerit's allegations by an Answer but declined to do so. They are bound by that choice.

Section 707(b) only applies when a debtor's debts are "primarily consumer debts." § 101(8) defines "consumer debt" as debt incurred "for personal, family, or household purpose." This is to be contrasted with debt incurred for a business venture or with a profit motive. *In re Sekendur*, 334 B.R. 609, 618 (Bankr. N.D. Ill. 2005) (internal quotation omitted). Furthermore, the word "primarily" has generally been construed as meaning at the very least a majority. *Id.*

FirstMerit asserted the following classifications of Debtors' debts. It treated the Nissan Maxima, Chevy Equinox, and credit card debt as consumer debts without any supporting factual allegations that the debts were incurred for personal, family, or household purpose rather than with a profit motive. However, Debtors have not contended that those debts are anything other than consumer debts. Thus, the Debtors' debts may be classified as follows:

**Consumer Debt**

| Source of Debt | Lender | Amount |
| --- | --- | --- |
| Elmwood Park Property | CitiMortgage | 137,622.77 |
| Elmwood Park Property | FirstMerit | 196,814.72 |
| El Lago Property | Nationstar | 264,842.00 |
| Nissan Maxima | Wells Fargo | 23,000.00 |
| Chevy Equinox | Wells Fargo | 25,000.00 |
| Credit Card Debt | (various) | 33,302.00 |
| | Total: | 680,581.49 |

**Non-Consumer Debt**

| Source of Debt | Lender | Amount |
| --- | --- | --- |
| Harlem Property Deficiency | FirstMerit | 110,448.00 |
| Emerald Property | Homeowners' Association | 188.00 |
| Harlem Property | Homeowners' Association | 243.34 |
| | Total: | 110,879.34 |

The Debtors have more than six times as much consumer debt as non-consumer debt. Thus, their debts are primarily consumer debts.

4

<u>A presumption of abuse arises under § 707(b)(2)</u>

A presumption of abuse arises when certain criteria enumerated in § 707(b)(2) are satisfied. Section 707(b)(2)(A) of the Bankruptcy Code (Title 11 U.S.C.) provides that a filing would be presumed abusive if "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) multiplied by 60 is not less than . . . $12,475." This framework is incorporated into the Official Form 22A and is commonly known as the "Means Test."

The first step in the Means Test is calculation of current monthly income, which is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period . . . [prior to the bankruptcy case filing date] . . . but excludes benefits received under the Social Security Act." § 101(10A).

Here, Debtors' Amended Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Debtors' Means Test Calculation") discloses gross wages, salary, tips, bonuses, overtime, commissions of $1,278.33, pension and retirement income of $2,132.23, and under income from all other sources, Pension Village of Elmwood Park for $4,564.82 for a total current monthly income of $7975.38. Debtors' Schedule I discloses a net employment income of $1,148.89, Social Security income of $2,665.00, and pension income of $2,010.00 and other income specified "Village Pension" of $6,000.00. The discrepancy in reporting a pension apparently results because Debtors claim part of the pension income to be exempt. However, pensions are included the calculation even if they are otherwise exempt because the definition of "current monthly income" is specifically defined as income received "from all sources." *In re Briggs*, 440 B.R. 490, 495 (Bankr. N.D. Ohio 2010). Thus, $1435.18, the difference between $6,000 and $4,564.82, will be added to Debtors' total current monthly income, resulting in a total current monthly income of $9,410.56.

According to the Debtors' Means Test Calculation, the total of all deductions allowed under § 707(b)(2) is $7,887.13. As a result, the monthly disposable income should be $1,523.43, not $88.25. The 60-month disposable income under would be $91,405.80, not $5,295.00. $91,405.80 is "not less than" $12,475. Thus, the presumption of abuse arises.

Because the upward adjustment to Debtors' current monthly income is more than enough to give rise to the presumption of abuse, there is no need to determine whether

5

Debtors properly deducted the expenses relating to the El Lago Property. Further, once the presumption of abuse arises, it "may only be rebutted by demonstrating special circumstances." § 707(b)(2)(B)(i). No special circumstances have been asserted by Debtors, much less demonstrated. As a result, a presumption of abuse has arisen under § 707(b)(2) which has not been rebutted by the Debtors.

## Conclusion

Therefore, Debtors' Chapter 7 bankruptcy case will be dismissed unless they convert the case to one under Chapter 13.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 26nd day of November 2013

In re Christine and Peter Terzo
13bk4073

## Certificate of Service

I, James Liu, certify that on November 26, 2013, I caused to be served copies of the foregoing document to the following on the attached service list by electronic service through the Court's CM/ECF system or regular U.S. mail:

_____
Law Clerk

### First Class Mail

Christine Terzo and Peter S. Terzo
1926 North 75th Avenue
Elmwood Park, IL 60707-3651

### Electronic Service through CM/ECF System

Nicole A Elipas
Andrew J Maxwell
Maxwell Law Group, LLC
105 W. Adams St., Suite 3200
Chicago, IL 60603
312-368-1138

Alex D Moglia, ESQ
Moglia Advisors
1325 Remington Rd, Ste H
Schaumburg, IL 60173
847 884-8282

William J Factor
Sara E Lorber
Christine Holtschlag
The Law Office of William J. Factor, LTD.
105 W. Madison, Suite 1500
Chicago, IL 60602
847-239-7248

Patrick S Layng
Roman Sukley
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785